IN THE UNITED STATES DISTRCIT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEMUEL WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| ENTERPRISE HOLDINGS, LLC, aka | ) | |
| ENTERPRISE LEASING COMPANY OF | ) | |
| CHICAGO, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff LEMUEL WASHINGTON, through his attorney, John T. Moran, submits this complaint against Defendant ENTERPRISE HOLDINGS, LLC aka ENTERPRISE LEASING COMPANY OF CHICAGO, LLC as follows:

### NATURE OF THE CASE

1.      LEMUEL WASHINGTON (hereafter "Plaintiff") brings this employment discrimination action seeking redress for racial discrimination, sexual harassment, and disability discrimination at work, as well as retaliation for the protected act of filing charges of discrimination against his employer, suffered in his capacity as an employee of the Defendant ENTERPRISE HOLDINGS, LLC aka ENTERPRISE LEASING COMPANY OF CHICAGO, LLC (hereafter "Enterprise" or "Defendant").

### PARTIES

2.     Plaintiff is a citizen of the United States and is a resident of the State of Illinois. At all times until his termination, Plaintiff was an employee of Enterprise.

3.     Defendant is a car rental company located at 3800 Manheim Road, Franklin Park, IL 60131. At all times relevant to this Complaint, the Defendant company was an "employer" pursuant to 42 U.S.C. § 2000e(b).

4.     Plaintiff filed his Charge of Discrimination with the Illinois Department of Human Rights (IDHR) on January 23, 2018 (No. 2018CF1378).

## JURISDICTION

5.     This court has jurisdiction under 775 ILCS 5/10-102, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), and the Americans with Disabilities Act, 42 U.S.C. § 12101.

6.     Venue is proper before this Court under Venue is proper pursuant to 775 ILCS 5/8-111(A)(1) because it is a district where Defendant resides or does business and where a substantial part of the events giving rise of Plaintiff's claims occurred.

## PROCEDURAL HISTORY

7.     On January 23, 2018, Plaintiff filed an IDHR Charge of Discrimination against Defendant. See Exhibit A. On February 1, 2019, the IDHR issued Plaintiff a Notice of Dismissal for lack of substantial evidence. See Exhibit B. On March 19, 2019, Plaintiff requested a substantial weight review of his charge. See Exhibit C. On June 3, 2019, the State of Illinois Human Rights Commission vacated the

previous dismissal of Plaintiff's charge and entered a finding of substantial evidence. See Exhibit D. On November 4, 2020, the EEOC issued Plaintiff a Right to Sue letter. See Exhibit E.

## FACTS

8. Plaintiff began working for Enterprise on July 24, 2014. Plaintiff was hired as a driver. His responsibilities included driving damaged cars to the dealership for repair and taking inventory of the lot.

9. Throughout his time at Enterprise, Plaintiff met all of his employer's legitimate performance expectations and generally received favorable performance reviews.

10. Plaintiff was the only Black employee in his department. His supervisors and coworkers were non-Black.

11. Plaintiff endured a racially hostile workplace environment. When Plaintiff was first hired in 2014, Carlos Tarafa, the Lead Driver and Plaintiff's supervisor, stated to a white employee, Pat Zimbowski, that Plaintiff was only hired into the department because of Affirmative Action. Plaintiff informed Jennifer Mecklenburg, Enterprise's Human Resources Manager, of these comments but the HR department never took meaningful action to address them.

12. On February 25, 2016, Plaintiff was riding in the passenger seat with Pat Zabrowski, a white employee, to pick up a car. When they discovered that the car was not ready for pickup, Ms. Zabrowski wanted to drive to another dealership, but Plaintiff asked to be dropped back at the office. Ms. Zabrowski refused and

repeatedly insulted Plaintiff. She called him a "fucking idiot" and said "this is why they don't hire your people." When Ms. Zabrowski continued to refuse to let Plaintiff out of the car, Plaintiff threatened to call the police. Ms. Zabrowski only relented when she called her supervisor who advised her to drive Plaintiff back to the office.

13. Plaintiff brought this incident to the attention of Ms. Mecklenburg, but again, HR failed to meaningfully address the issue. To Plaintiff's knowledge, HR never spoke with Pat about her behavior and Pat was never written up.

14. Defendant's racially hostile work environment and the stress it produced exacerbated Plaintiff's anxiety and asthma.

15. Despite Plaintiff's continued good performance, he received two disciplinary memos, one in 2015 for time integrity and the other in August 2017 for missing days.

16. Plaintiff disputed the 2017 memo because the time he had missed from work had been approved by Defendant's management. Indeed, Plaintiff asked his supervisor, Mr. Gunnels, for time off from work to take care of his recently deceased father's reburial.

17. In 2016, Mark Gunnels became Plaintiff's supervisor. Mr. Gunnels and Plaintiff enjoyed a friendly working relationship until Plaintiff filed charges against Defendant.

18. In 2017, Plaintiff filed a sexual harassment charge against Neil McCain, the Lead Driver.

19.     After Plaintiff filed his charge, the HR department and Mr. Gunnels singled Plaintiff out for disciplinary treatment that was not given to other similarly situated employees. At one point, Mr. Gunnels pulled up in his vehicle to write up Plaintiff while Plaintiff was working with customers.

20.     Plaintiff suffers from severe asthma. Defendant was aware of Plaintiff's condition.

21.     After Plaintiff filed these charge, Plaintiff's disability was accommodated only once. In October 2017, Mr. Gunnels allowed Plaintiff to work inside for three days. Plaintiff was given paperwork and I-Passes to process.

22.     In November 2017, Plaintiff requested to work inside to avoid an asthma attack, as the cold weather exacerbated his symptoms. This time, Ms. Mecklenburg denied Plaintiff's request for accommodation despite there being plenty of indoor paperwork for Plaintiff to complete. When Plaintiff inquired as to why he could not work indoors like he had previously, Ms. Mecklenburg stated that another employee, Diane Jenkins, was already processing the I-Passes and that "they were not going to pay two people to perform one job." When Plaintiff asked if he could take care of the paperwork that was related to his position, Ms. Mecklenburg told him that the Lead Driver would take of it instead. However, Plaintiff noted that the Lead Driver was not present at work that day.

23.     After Defendant denied Plaintiff's request for accommodation, Plaintiff returned outside to perform his duties, but suffered an asthma attack. Plaintiff returned to the office to inform Ms. Mecklenburg that he could not breathe. Shortly

afterward, Plaintiff passed out and hit his head. Defendant called an ambulance for Plaintiff and he was taken to the hospital.

24.     Plaintiff requested leave from work after his hospitalization. On January 22, 2018 Plaintiff received a letter from Defendant stating that his leave had been approved from December 2018 to March 2018. That same day, Plaintiff received another letter from Defendant stating that he had been terminated.

25.     In refusing to reasonably accommodate Plaintiff, Defendant impeded Plaintiff's ability to perform the essential functions of his job. Defendant's failure to accommodate Plaintiff's disability also led to a worsening of Plaintiff's existing conditions and resulted in a major head injury.

## COUNT I
### RACE DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT & TITLE VII

26.     Plaintiff repeats and realleged paragraphs 7 – 25 and incorporates same by reference as though fully set out in this Count I.

27.     Plaintiff is a member of a protected class under the Illinois Human Rights Act and under Title VII of the Civil Rights Act of 1964. He is an African American male.

28.     Plaintiff was qualified for his position and at all relevant times throughout his employment met Defendant's legitimate performance expectations.

29.     Plaintiff was the only Black person in his department; his supervisor and coworkers were all non-Black employees.

30.     Despite Plaintiff's qualifications and work performance, he was treated differently than similarly situated white or non-African American employees when he was terminated over a minor attendance violation.

31.     On January 9, 2017, Plaintiff applied for the Lead Driver position. Plaintiff had received strong performance reviews and was commended for his work ethic. Indeed, Plaintiff's supervisor specially chose Plaintiff to assist with inventory because of Plaintiff's trustworthiness and work ethic. However, despite Plaintiff's qualifications and performance, he was denied a promotion to Lead Driver. The position was instead given to Mr. McCain, a white employee.

32.     After Defendant denied Plaintiff the promotion to Lead Driver, Defendant had Plaintiff train Mr. McCain.

33.     Plaintiff filed a charge with the Illinois Department of Human Rights. It was dismissed for lack of substantial evidence.  Plaintiff filed a timely Request for Review, and on June 3, 2019, the Illinois Human Rights Commission vacated the dismissal of Plaintiff's charge of racial discrimination for lack of substantial evidence and remanded for a finding of substantial evidence in a non-final order – Exhibit A to this Complaint.

34.     In discriminating against Plaintiff, Enterprise acted willfully and/or with reckless indifference to Plaintiff's federally protected rights.

## DAMAGES

As a proximate result of the foregoing facts, Plaintiff has been subjected to unlawful discrimination on the basis of race and suffered incidental damages, loss

of wages, and loss of benefits, which has caused him to retain an attorney to protect his legal rights.

WHEREFORE, Plaintiff respectfully asks this Honorable Court to enter a judgement against Defendant as follows:

A) For an order declaring that Enterprise's actions and practices violated 42 U.S.C. § 2000(e), and permanently enjoin Enterprise (and their officers, agents, and successors) from engaging in actions or practices that discriminate against any employee on the basis of race for asserting their rights under the Act;

B) For an order directing Enterprise to pay Plaintiff compensatory damages in a sum in excess of $300,000.

C) For an order directing Enterprise to pay Plaintiff any withheld or lost pay and lost benefits from the date of his termination to the date of an award by a jury or judge;

D) For an order directing Enterprise to restore any lost seniority and benefits, or, in the alternative, to pay him front pay and lost benefits;

E) For an order directing Enterprise to remove any negative memoranda, notes, documents, files, comments, letters, etc., from Plaintiff's personnel file;

F) Award Plaintiff his reasonable attorney's fees and costs; and

G) Grant any and all other relief that this Court deems just and proper.

## <u>COUNT II</u>
**SEXUAL HARASSMENT IN VIOLATION OF THE**

## ILLINOIS HUMAN RIGHTS ACT & TITLE VII

35.     Plaintiff repeats and realleged paragraphs 7 – 34 and incorporates same by reference as though fully set out in this Count II.

36.     On February 14, 2017, Plaintiff reported fellow employee Neil McCain to Enterprise HR for sexual harassment.

37.     Mr. McCain made sexually explicit statements to Plaintiff, saying that Plaintiff would enjoy the movie 50 Shades of Grey because of the "whips and chains and stuff" and that he would especially enjoy the anal sex scenes and made reference to the "male g-spot." The conversation made Plaintiff highly uncomfortable.

38.     Plaintiff reported McCain to HR but Defendant failed to meaningfully address the issue. Instead, HR instructed Plaintiff and Mr. McCain to stay away from each other and told McCain not to contact Plaintiff via phone outside of work.

39.     Later that day, after Plaintiff reported McCain, McCain passed Plaintiff in the hallway and told him to "go home and have sex."

40.     Despite HR's instruction, McCain contacted Plaintiff outside of work. Plaintiff responded that he did not wish to speak with McCain and informed HR about the incident.

41.     In response to Plaintiff's complaints regarding Mr. McCain, HR accused Plaintiff of being "childish" and told him to "grow up."

42.     After Defendant failed to address the incident, Plaintiff filed a charge against Defendant with the IDHR.

43.     In failing to address the incident, Enterprise acted willfully and/or with reckless indifference to Plaintiff's federally protected rights.

## DAMAGES

As a proximate result of the foregoing facts, Plaintiff has been subjected to unlawful sexual harassment and suffered incidental damages which have caused him to retain an attorney to protect his legal rights.

WHEREFORE, Plaintiff respectfully asks this Honorable Court to enter a judgement against Defendant as follows:

H)     For an order declaring that Enterprise's actions and practices violated 42 U.S.C. § 2000(e), and permanently enjoin Enterprise (and their officers, agents, and successors) from engaging in sexually harassing actions or practices against any employee;

I)     For an order directing Enterprise to pay Plaintiff compensatory damages in a sum in excess of $300,000.

J)     For an order directing Enterprise to pay Plaintiff any withheld or lost pay and lost benefits from the date of his termination to the date of an award by a jury or judge;

K)     For an order directing Enterprise to restore any lost seniority and benefits, or, in the alternative, to pay him front pay and lost benefits;

L)     For an order directing Enterprise to remove any negative memoranda, notes, documents, files, comments, letters, etc., from Plaintiff's personnel file;

M)    Award Plaintiff his reasonable attorney's fees and costs; and

N)    Grant any and all other relief that this Court deems just and proper.

## COUNT III:
## DISABILITY DISCRIMINATION: FAILURE TO ACCOMMODATE

44.    Plaintiff repeats and realleges paragraphs 7 – 43  and incorporates same by reference as though fully set out in this Count III.

45.    Plaintiff is an individual with a disability within the meaning of Section 1-103(1) of the Human Rights Act and pursuant to Section 12111 of the Americans with Disabilities Act.

46.    Plaintiff has been diagnosed with asthma. Plaintiff also suffered a head injury during his term of employment at Enterprise.

47.    Plaintiff's asthma is severe; Plaintiff's doctor prescribed him a breathing steroid to manage the symptoms.

48.    Despite occasional asthmatic flare-ups, Plaintiff would show up for work and perform his duties.

49.    Defendant was aware of Plaintiff's conditions throughout his term of employment.

50.    At all relevant times, Plaintiff remained qualified for his position at Enterprise and his performance as a driver met all of Defendant's legitimate performance expectations.

51.    Despite Defendant's awareness of Plaintiff's conditions, Defendant failed to reasonably accommodate Plaintiff's disabilities.

52. In October 2017, Plaintiff submitted a doctor's note to Ms. Mecklenburg, that stated that working outdoors in the cold was aggravating his asthma. In response, Ms. Mecklenburg informed Plaintiff that there was no indoor work available to him as an alternative. However, Plaintiff knew there were many indoor tasks relevant to his job that he could have performed that would have allowed him to avoid dangerous asthmatic flareups.

53. As a result of Defendant's failure to accommodate Plaintiff's asthma, Plaintiff passed out in the dealership office and sustained a head injury. The head injury has had long-lasting consequences for Plaintiff; he continues to unexpectedly fall unconscious and as a result can no longer drive, live alone, or perform other daily tasks.

54. On January 10, 2018, after Plaintiff sustained his head injury, Plaintiff submitted an accommodation request to Human Resources Manager Debbie Cuva. The accommodation request stated that Plaintiff's doctor released him to return to work and cleared him for non-driving duties. However, Ms. Cuva informed Plaintiff that no non-driving duties were available and told Plaintiff not to return to work until his doctor cleared him for driving duties.

55. In failing to accommodate Plaintiff, Defendant impeded Plaintiff's ability to fully perform the essential functions of his position. Defendant's failure to accommodate Plaintiff's disability resulted in an injury that caused Plaintiff to lose his ability to work and lose his independence. Plaintiff now lives with lifelong consequences of his head injury.

## DAMAGES

As a proximate result of the foregoing facts, Plaintiff has been subjected to unlawful discrimination on the basis of disability and suffered incidental damages, loss of wages, and loss of benefits, which has caused him to retain an attorney to protect his legal rights.

WHEREFORE, Plaintiff respectfully asks this Honorable Court to enter a judgement against Defendant as follows:

A) For an order declaring that Enterprise's actions and practices violated the Illinois Human Rights Act and permanently enjoin Enterprise (and their officers, agents, and successors) from engaging in actions or practices that discriminate against any employee on the basis of disability for asserting their rights under the Act;

B) For an order directing Enterprise to pay Plaintiff compensatory damages in a sum in excess of $300,000.

C) For an order directing Enterprise to pay Plaintiff any withheld or lost pay and lost benefits from the date of his termination to the date of an award by a jury or judge;

D) For an order directing Enterprise to restore any lost seniority and benefits, or, in the alternative, to pay him front pay and lost benefits;

E) For an order directing Enterprise to remove any negative memoranda, notes, documents, files, comments, letters, etc., from Plaintiff's personnel file;

F)  Award Plaintiff his reasonable attorney's fees and costs; and

G)  Grant any and all other relief that this Court deems just and proper.

### COUNT IV
### DISABILITY DISCRIMINATION: WRONGFUL TERMINATION

56.     Plaintiff repeats and realleges paragraphs 7 – 55 and incorporates same by reference as though fully set out in this Count IV.

57.     Plaintiff is an individual with a disability within the meaning of Section 1-103(1) of the Human Rights Act and pursuant to Section 12111 of the Americans with Disabilities Act.

58.     On January 22, 2018, after Plaintiff sustained his head injury, Enterprise terminated Plaintiff for a minor attendance violation the same day it granted his medical leave.

59.     At the time Plaintiff was terminated for a minor attendance infraction, he still had unused paid-time-off days.

60.     Similarly situated employees with no known disabilities and who did not previously seek disability accommodation were not terminated for similar violations or under similar circumstances.

### DAMAGES

As a proximate result of the foregoing facts, Plaintiff has been subjected to unlawful discrimination on the basis of disability and suffered incidental damages, loss of wages, and loss of benefits, which has caused him to retain an attorney to protect his legal rights.

WHEREFORE, Plaintiff respectfully asks this Honorable Court to enter a judgement against Defendant as follows:

A) For an order declaring that Enterprise's actions and practices violated the Illinois Human Rights Act and permanently enjoin Enterprise (and their officers, agents, and successors) from engaging in actions or practices that discriminate against any employee on the basis of disability for asserting their rights under the Act;

B) For an order directing Enterprise to pay Plaintiff compensatory damages in a sum in excess of $300,000.

C) For an order directing Enterprise to pay Plaintiff any withheld or lost pay and lost benefits from the date of his termination to the date of an award by a jury or judge;

D) For an order directing Enterprise to restore any lost seniority and benefits, or, in the alternative, to pay him front pay and lost benefits;

E) For an order directing Enterprise to remove any negative memoranda, notes, documents, files, comments, letters, etc., from Plaintiff's personnel file;

F) Award Plaintiff his reasonable attorney's fees and costs; and

G) Grant any and all other relief that this Court deems just and proper.

## COUNT V
## RETALIATION

61.    Plaintiff repeats and realleged paragraphs 7 – 60 and incorporates same by reference as though fully set out in this Count V.

62.     Plaintiff engaged in statutorily protected activity under the Illinois Human Rights Act and under Title VII when he filed his discrimination charges with the Illinois Department of Human Rights against Defendant.

63.     Plaintiff filed a number of charges of discrimination with the IDHR for race discrimination, sexual harassment, hostile work environment, failure to promote, and wrongful termination.

64.     In response to Plaintiff's filings, HR personnel informed him that he could not get an "exceeds expectations" on his performance review. HR also worked to isolate Plaintiff from his coworkers and members of other departments. HR refused to correspond with Plaintiff and routinely ignored his emails and calls.

65.     In October 2017, Defendant attempted to get Plaintiff to drop the sexual harassment charge against Mr. McCain, but Plaintiff refused to drop the charge. After Plaintiff's refusal, Defendant stopped approving Plaintiff's requests for accommodation.

66.     On January 22, 2018, Defendant terminated Plaintiff for a minor attendance violation.

67.     Similarly situated employees who did not engage in statutorily protected activity were not terminated under similar circumstances.

## DAMAGES

As a proximate result of the foregoing facts, Plaintiff has been subjected to unlawful retaliation and suffered incidental damages, loss of wages, and loss of benefits, which has caused him to retain an attorney to protect him legal rights.

WHEREFORE, Plaintiff respectfully asks this Honorable Court to enter a judgement against Defendant as follows:

A) For an order declaring that Enterprise's actions and practices violated 42 U.S.C. § 2000(e), and permanently enjoin Enterprise (and their officers, agents, and successors) from engaging in actions or practices that discriminate against any employee for asserting their rights under the Act;

B) For an order directing Enterprise to pay Plaintiff compensatory damages in a sum in excess of $300,000.

C) For an order directing Enterprise to pay Plaintiff any withheld or lost pay and lost benefits from the date of his termination to the date of an award by a jury or judge;

D) For an order directing Enterprise to restore any lost seniority and benefits, or, in the alternative, to pay him front pay and lost benefits;

E) For an order directing Enterprise to remove any negative memoranda, notes, documents, files, comments, letters, etc., from Plaintiff's personnel file;

F) Award Plaintiff his reasonable attorney's fees and costs; and

G) Grant any and all other relief that this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all counts.

Respectfully submitted,

/s/ John T. Moran, Jr.
John T. Moran, Jr.
The Moran Law Group
566 West Lake St., Ste. 101
Chicago, IL 60661
(312) 405-4474
j.t.m.moran@gmail.com