# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LEMUEL WASHINGTON,
      Plaintiff

   v.

ENTERPRISE LEASING COMPANY
OF CHICAGO, LLC,
      Defendant

No. 21 CV 556

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

Plaintiff Lemuel Washington is suing his former employer, Enterprise Leasing Company of Chicago, LLC ("Enterprise"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. 2000(e) *et seq.* and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/10-102, as well as disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The parties have cross-moved for summary judgment. (R. 99; R. 114.)[1] For the reasons that follow, Washington's motion for summary judgment is denied and Enterprise's motion for summary judgment is granted.

## BACKGROUND

### I. LOCAL RULE 56.1

Before delving into the record, the Court briefly addresses the application of Local Rule 56.1. (*See* R. 131 at 2–3.) A district court has discretion to enforce

---

[1] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

compliance with its local rules at summary judgment. *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Local Rule 56.1(e)(3) provides that "to dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. LR 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.*

None of Washington's responses to Enterprise's statement of material facts cite evidentiary material as required by Local Rule 56.1(e). Accordingly, the Court deems all of these asserted facts admitted in deciding Enterprise's motion for summary judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (holding that "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material"); *Zavala-Alvarez v. Darbar Mgmt., Inc.*, 617 F. Supp. 3d 870, 890 (N.D. Ill. 2022) (deeming asserted facts admitted for the purpose of deciding motion for summary judgment due to failure to comply with Local Rule 56.1(e)(3)); *Bertaux v. Aurora Police Dep't*, No. 18 C 5171, 2022 WL 198888, at *2 (N.D. Ill. Jan. 21, 2022) (same). Notwithstanding Washington's failure to controvert Enterprise's facts, the Court still views those facts in the light most favorable to him. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 533 (7th Cir. 2011).

Washington also filed a reply in response to Enterprise's Local Rule 56.1(e) statement. (*See* R. 130.) The reply contains factual assertions and, in some instances, citations to supporting evidence. (*See id.*) Enterprise contends that this reply violates Local Rule 56.1(f), which precludes a party from replying to its opponent's Local Rule

56.1(e) response without first obtaining leave of court. (R. 131 at 3 (citing N.D. Ill. L.R. 56.1(f)).) Although Washington did not seek leave to file this reply, the Court considers his failure to comply with Local Rule 56.1(f) excusable. Because the parties are both moving for summary judgment, Washington could have properly introduced the facts contained in his Rule 56.1 reply as "additional facts" in response to Enterprise's Rule 56.1 statement, which Enterprise filed on the same day as its Rule 56.1(e) response. *See* N.D. LR 56.1(b)(3); (R. 113; R. 117.) Because considering the material cited in the reply would not cause any prejudice or unfair surprise to Enterprise under the circumstances, the Court excuses this technical violation. *See Scott v. Khan*, No. 20 C 4120, 2022 WL 3576682, at *4 (N.D. Ill. Aug. 19, 2022) (collecting cases).

## II. FACTUAL BACKGROUND[2]

With the stage set, the Court now turns to the facts. Plaintiff Lemuel Washington is an African American man with asthma who began working in 2014 as a driver for Enterprise, an automobile leasing company headquartered in Franklin, Illinois. (Def.'s Resp. to Pl.'s SOF ¶¶ 1–2.) Washington's primary duties at Enterprise included delivering vehicles and customers to designated locations, riding along with

---

[2] The Court takes information in this section from Washington's Local Rule 56.1(b)(3) Statement of Facts ("Pl.'s SOF") (R. 101); Enterprise's Response to Washington's Local Rule 56.1(b)(3) Statement of Facts ("Def.'s Resp. to Pl.'s SOF") (R. 113); Enterprise's Statement of Undisputed Material Facts ("Def.'s SOF") (R. 117); Washington's Responses to Enterprise's Statement of Material Facts ("Pl.'s Resp. to Def.'s SOF") (R. 129); Washington's Reply to Enterprise's Response to Washington's Statement of Material Facts ("Pl.'s SOF Reply") (R. 130); the materials cited therein, and all other aspects of the record in this case. Facts are genuinely undisputed unless otherwise noted.

other drivers to drop off vehicles, and performing related vehicle maintenance. (*Id.* ¶ 11; *see* R. 116-11.)

During all times that Washington was employed by Enterprise, the company maintained an "Attendance and Punctuality" policy stating that attendance and punctuality were an "essential function" of all positions at the company. (Def.'s SOF ¶ 9; R. 116-10.) The policy provides that a medical absence of more than three days must be substantiated by a doctor's note, and that repeated absences or tardiness are cause for disciplinary action, up to and including termination. (R. 116-10.) Enterprise's policy handbook provides that unpaid leaves of absence are subject to "[Enterprise's] discretion" and require authorization of an officer or a group general manager (R. 101-2 at 88.)

Shortly after Washington began working at Enterprise, he experienced harassment in the form of derogatory, race-based comments from two coworkers, Carlos Tarafa and Patricia Zamzow. (Def.'s Resp. to Pl.'s SOF ¶¶ 13–14.) Tarafa allegedly told Zamzow that Washington "was only hired because of affirmative action." (*Id.* ¶ 13.) On another occasion, Zamzow allegedly called Washington a "fucking idiot" in response to a perceived mistake, and stated, "this is why they don't hire you people." (*Id.* ¶ 14.)[3] Washington reported these incidents to management. (*Id.* ¶ 15.) Enterprise investigated the incidents and determined that no unlawful

---

[3] Enterprise objects to these statements as hearsay. (*See* Def.'s Resp. to Pl.'s SOF ¶ 13.) The statements are not hearsay, however, because they are not offered for the truth of the matter asserted. Fed. R. Evid. 801(c)(2).

conduct occurred—a conclusion that Washington disputes. (*Compare id.*, *with* R. 116-1 ("Washington Dep.") at 128:18–22.)

While the investigation was pending, Washington took an unpaid leave of absence. (Pl.'s Resp. to Def.'s SOF ¶ 19.) Zamzow retired during this time. (*Id.* ¶ 17.) When Washington returned to Enterprise on March 13, 2016, he and Tarafa were assigned separate tasks and instructed not to interact with each other. (*Id.* ¶ 20.) Tarafa disobeyed this instruction and was reprimanded and subjected to progressive discipline. (*Id.* ¶ 22.) Enterprise terminated Tarafa in November 2016 for unsatisfactory job performance and violating the instruction not to interact with Washington. (*Id.* ¶ 23; R. 116-3 ¶ 9.)

After Tarafa's departure, Washington's supervisor, Mark Gunnells, began interviewing candidates for a lead driver position. (*Id.* ¶ 24.) Washington applied for the job at Gunnells' recommendation, and Gunnells wrote him a letter of recommendation. (*Id.*) Gunnells and another supervisor, Dominick Puleo, eventually interviewed three candidates: Washington, Ecko Broadnax, and Neil McCann. (*Id.* ¶ 25.) Broadnax, like Washington, is African American; McCann is White. (Def.'s Resp. to Pl.'s SOF ¶ 57.) The interviewers used a scoring system that assigned each candidate numerical scores based on their responses to questions asked during the interview. (Def.'s SOF ¶ 26.) Washington received a score of 18, Broadnax received a 19, and McCann received a 26. (Pl.'s Resp. to Def.'s SOF ¶ 26.) Enterprise hired McCann for the position. (*Id.* ¶ 55.) Gunnells stated that he believed McCann had more relevant experience than Washington because he owned a truck fleet prior to

5

working at Enterprise and had experience liaising with dealerships and managing employees. (R. 116-2 ("Gunnells Dep.") at 39:12–14, 43:12–44:10; R. 116-3 ¶ 12.)

After McCann started in his role as lead driver, Washington complained that McCann verbally harassed him by making sexually charged comments. (Pl.'s Resp. to Def.'s SOF ¶ 32.) As with the prior incidents concerning Tarafa and Zamzow, Enterprise investigated each of Washington's complaints against McCann. (*Id.* ¶ 33.) Enterprise's internal investigation did not substantiate Washington's allegations but revealed that both McCann and Washington had "failed to engage in professional workplace interactions." (*Id.*) Washington was directed not to report to McCann and to report to Gunnells instead. (*Id.* ¶ 36.) McCann was eventually terminated from Enterprise in 2020 due to workplace misconduct unrelated to his interactions with Washington. (*Id.* ¶ 39; R. 116-5 ¶ 16.)

In April of 2017, Washington was granted a ninety-day leave of absence to address personal matters. (Pl.'s Resp. to Def.'s SOF ¶ 41.) During this time, Washington exhausted his protected leave under the Family Medical and Leave Act. (*Id.* ¶ 42.) After Washington returned to work in June, he accumulated numerous unexcused absences, was late to work on a number of occasions, and left early at least twice. (*Id.* ¶ 43.) In August, Gunnells gave Washington an Attendance Warning Memorandum that informed him he would be subject to disciplinary action up to and including termination if his attendance did not improve. (*Id.* ¶ 44.) Washington signed the memo and had a follow-up conversation with Human Resources Manager, Debra Cuva, about its contents. (R. 116-20; R. 116-21 at 1.)

In October, Washington started having trouble breathing outdoors due to his asthma. (Pl.'s Resp. to Def.'s SOF ¶ 50; Washington Dep. at 208:1–15.) On October 18, Washington told Gunnells that he needed to work inside. (Pl.'s Resp. to Def.'s SOF ¶ 50.) He supported his request with medical documentation the following day. (*Id.*) For the next three days, Enterprise allowed Washington to temporarily work indoors. (*Id.* ¶ 51.) Thereafter, the company placed Washington on unpaid leave because there was no more indoor work for him to perform. (*Id.* ¶ 52.)

Washington returned to work on October 26, 2017. (*Id.* ¶ 55.) On November 13, 2017, Washington informed Gunnells that his asthma was flaring up again and requested to work inside. (*Id.* ¶ 56.) Gunnells stated that there was no more indoor work for Washington to perform, and that he should remain at home if his asthma prevented him from working outdoors. (*Id.* ¶ 57.) That same day, Washington suffered a medical episode during which he allegedly passed out in the Enterprise office and suffered a head injury. (*Id.* ¶ 58; Def.'s Resp. to Pl.'s SOF ¶ 21.)[4] Washington was absent from work for the next week. (*See generally* Pl.'s Resp. to Def.'s SOF.) He did not provide medical documentation to substantiate these absences. (*Id.* ¶ 59.)

On November 20, Washington provided a note from his doctor stating that he "was advised to be off work from November 20, 2017 and return December 6, 2017." (*Id.* ¶ 60; R. 116-31.) Washington took the recommended absence but did not return

---

[4] It is unclear whether the incident was precipitated by Washington's asthma or another underlying condition. Washington testified during his deposition that "[the doctors] have not found out why I passed out," and that "[p]sychiatrists have drawn the conclusion that it's most likely stress related." (Washington Dep. at 55:19–22.)

to work on December 6. (Pl.'s Resp. to Def.'s SOF ¶ 61.) The following day, he presented a second note excusing him from work from December 7 through December 22. (*Id.*) He presented a third note on December 21, recommending additional absences through January 5. (*Id.* ¶ 62.) He worked a partial day on December 26. (*Id.* ¶ 63.)

On January 8, 2018 (the Monday following January 5), Washington told Enterprise that he could not see his doctor until January 9, 2018, and thus could not return to work until January 10, 2018. (*Id.* ¶ 64.) On January 10, Washington came into the Enterprise office and informed his supervisors that he could not return to work. (*Id.* ¶ 65.) He did not provide additional medical documentation until January 17, when he provided a fourth doctor's note excusing further absences until January 26. (*Id.* ¶ 66.) Gunnells testified that, during this time, he attempted to give Washington a second Attendance Warning Memorandum, but that Washington never returned to work to receive this document. (*Id.* ¶ 68; R. 116-3 ¶ 24.)

On January 22, 2018, Washington received a letter from Enterprise's benefits department. (Pl.'s Resp. to Def.'s SOF ¶ 74; Def.'s Resp. to Pl.'s SOF ¶ 71.) The letter stated that Washington had been placed on medical leave on December 7, 2017, and that he would remain eligible for health and welfare benefits for ninety days provided that he "remain[ed] a member of an eligible class." (R. 101-9.) Cuva testified that the letter was automatically generated by Enterprise's corporate benefits department and that Washington's eligibility "changed" because he "had an indefinite return

date, was not able to do his job as a driver and was unable to return to work (R. 101-6 at 51:20–52:3.)

That same day, Human Resources Manager Jennifer Mecklenburg called Washington to confirm whether he would return to work on January 26. (Pl.'s Resp. to Def.'s SOF ¶ 70.) Washington said he was not yet cleared to work and would only return when he had been cleared by his doctors. (*Id.*) Mecklenburg informed Washington that Enterprise had determined that his leave request had become indefinite and terminated his employment. (*Id.* ¶¶ 71–72.) Enterprise's records indicate that, between July 1, 2017, and December 31, 2017, Washington worked only 536.48 of the 1,000 hours for which he was scheduled. (*Id.* ¶ 68.)

## III.    PROCEDURAL BACKGROUND

Washington filed four charges of discrimination against Enterprise with the Illinois Department of Human Rights ("IDHR"), all of which were automatically cross-filed with the EEOC.[5] The first charge was filed on February 29, 2016 (Charge No. 2016 CF 1895) and alleged hostile work environment and racial discrimination based on Tarafa and Zamzow's conduct and Enterprise's allegedly deficient response. (*Id.* ¶ 76; R. 116-39.) In October 2017, the IDHR dismissed the charge. (*Id.* ¶ 78.) Washington requested review of this decision by the Illinois Human Rights Commission (the "Commission"). (R. 116-41.) The EEOC mailed a notice of right-to-sue to Washington on February 20, 2018. (Pl.'s Resp. to Def.'s SOF ¶ 79; 116-40.)

---

[5] "IDHR has a worksharing agreement with EEOC, whereby a charge filed with IDHR is automatically cross-filed with EEOC." *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016).

Following review, the Commission vacated IDHR's dismissal order and remanded the case for a substantial evidence determination. (*Id.* ¶ 80.) The remand order was sent to Washington's address via first class mail. (R. 116-42 at 3.) On June 6, 2019, the IDHR sent a "Notice of Substantial Evidence" to Washington's address. (Pl.'s Resp. to Def.'s SOF ¶ 81; R. 116-43.) The Notice stated that Washington had three options: request the IDHR to initiate a complaint with the Commission within thirty days of receipt of the notice, file a complaint with the Commission within ninety days, or bring an action in the "appropriate state circuit court" within ninety days. (R. 116-43 at 2–3.) On August 12, 2019, the IDHR sent Washington a second letter informing him of his obligation to file suit within ninety days of receipt of the Notice of Substantial Evidence. (Pl.'s Resp. to Def.'s SOF ¶ 82; R. 116-44.) Washington did not initiate proceedings with the Commission, nor did he file suit within ninety days.

The second charge, which related to Enterprise's failure to promote Washington for the lead driver position (Charge No. 2017 CF 1743), was filed with the IDHR on February 2, 2017. (*Id.* ¶ 83.) The IDHR dismissed the charge, and the EEOC issued a notice of right-to-sue on March 4, 2021. (*Id.* ¶ 84.)

The third charge, filed on October 25, 2017 (Charge No. 2017 CF 3370), alleged sexual harassment, retaliation, race discrimination, and disability discrimination due to harassment by McCann. (*Id.* ¶ 85; R. 116-47.) The EEOC issued a notice of right-to-sue for this charge on April 19, 2019. (Pl.'s Resp. to Def.'s SOF ¶ 90.)

The final charge, filed on January 23, 2018 (Charge No. 2018 CF 1378), alleged that Enterprise (1) failed to accommodate Washington's disability by providing him

with non-driving duties, (2) discharged Washington in January 2018 because of his race and disability, and, alternatively, (3) discharged Washington in retaliation for filing his previous discrimination charges. (R. 7-1.) The EEOC issued Washington a notice of right-to-sue for this charge on November 4, 2020. (Pl.'s Resp. to Def.'s SOF ¶ 94.)

Washington filed this lawsuit on January 31, 2021. (R. 1) He later amended his complaint. (R. 7.) The amended complaint alleged six counts: (1) race discrimination in violation of Title VII and the IHRA, (2) sexual harassment in violation of Title VII, (3) failure to accommodate in violation of the ADA, (4) wrongful termination under Title VII and the ADA, (5) failure to promote on the basis of race, and (6) retaliation under Title VII and the IHRA. (*See generally id.*) The Court dismissed Washington's sexual harassment claim due to failure to exhaust administrative remedies, concluding that the allegations in Charge No. 2017 CF 3370 had not been properly exhausted. (R. 24 at 8–9.) The Court declined to dismiss Washington's hostile work environment on timeliness grounds but noted that a developed record might support a different conclusion. (*Id.* at 7–8.) The parties now cross-move for summary judgment on Washington's remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56). "[G]eneralized and unsupported allegations cannot create a genuine dispute," *Anderson v. Mott St.*, __ F.4th __, 2024 WL 2966154, at *2 (7th Cir. June 13,

2024) (citation omitted), and "the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Tyburski v. City of Chi.*, 964 F.3d 590, 597 (7th Cir. 2020) (quoting *Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010)). In evaluating cross-motions for summary judgment, the Court takes "the facts in the light most favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 648 (7th Cir. 2003).

## ANALYSIS

### I. RACIAL DISCRIMINATION

The Court begins with Washington's racial discrimination claims. Employers are forbidden from discriminating against their employees on the basis of race. 42 U.S.C. § 2000e–2(a) (Title VII); 775 ILCS 5/1–102(A) (IHRA); *see also Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (explaining that Title VII and IHRA racial discrimination claims require proof of the same elements and may be evaluated together); *Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) (same).

To survive summary judgment, Washington must "marshal sufficient evidence" (either direct or circumstantial) that he suffered a materially adverse employment action motivated by discriminatory animus. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). The Court does not distinguish between "direct" and "indirect" evidence, and instead evaluates all the evidence "as a whole." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). A materially adverse action is one which creates "a significant change in employment status." *Andrews v. CBOCS West, Inc.*,

743 F.3d 230, 235 (7th Cir. 2014). Such changes can involve an employee's wealth, career prospects, or changes to work conditions that are humiliating, degrading, unsafe, unhealthy, or otherwise significantly negative. *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007).

Besides Washington's termination and Enterprise's failure to hire him for the lead driver position (addressed below in the context of Washington's wrongful termination and failure to promote claims), Washington does not identify any materially adverse employment actions that he suffered at Enterprise.[6] Instead, he aggregates multiple incidents of allegedly discriminatory treatment. Seventh Circuit case law is clear that, in the absence of an adverse employment action, a "totality of the circumstances" discrimination theory can only proceed as a claim for hostile work environment. *Boss*, 816 F.3d at 918 (citing *Hall v. City of Chi.*, 713 F.3d 325, 334 (7th Cir. 2013)). The Court therefore begins by addressing Washington's claim for hostile work environment, followed by his claims for failure to promote, wrongful termination, and retaliation.

---

[6] Washington claims that he was "isolated" from other Enterprise employees when he was instructed to work with Gunnells following Enterprise's investigation into Neil McCann's alleged sexual harassment. (*See* Pl.'s SOF ¶ 36 (citing Washington Dep. at 171).) This conduct does not rise to the level of an adverse employment action, however, since Washington admits it resulted in no change to his job responsibilities, compensation, or benefits, and was done for the purpose of separating him from his alleged harasser. (*See* Pl.'s Resp. to Def.'s SOF ¶¶ 20 36); *see, e.g.*, *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) (noting that "a transfer involving no reduction in pay and no more than a minor change in working conditions" is not an adverse employment action) (quotation omitted); *Akanji v. James Hardie Bldg. Prod. Inc.*, No. 19 C 3988, 2022 WL 18152467, at *8 (N.D. Ill. July 22, 2022) (citing *Parkins v. Civ. Constructors of Ill., Inc.*, 163 F.3d 1027, 1039 (7th Cir. 1998) ("[O]stracism and isolation , absent evidence of material harm, are not adverse employment actions.")). Furthermore, as provided in the Court's previous opinion, allegations concerning Neil McCann's alleged sexual harassment of Washington and Enterprise's response are time-barred. (R. 24 at 8–9.)

13

### A. Hostile Work Environment

To establish a hostile work environment claim, Washington must present evidence that he suffered harassment based on his race that was severe or pervasive enough to alter conditions of his employment. *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). Enterprise argues Washington cannot pursue a hostile work environment claim because he has failed to exhaust his administrative remedies. (R. 115 at 9.)

"Before bringing a Title VII [or an IHRA] claim, a plaintiff must first exhaust his administrative remedies by filing charges with the" relevant agency "and receiving a right-to-sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). An initial complaint must be filed within 300 days of experiencing discrimination. *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 825 (7th Cir. 2015). Any action filed more than ninety days after the plaintiff receives a right-to-sue letter is time-barred. *King v. Ford Motor Co.*, 872 F.3d 833, 839 (7th Cir. 2017) (citing 42 U.S.C. § 2000e-5(f)(1)).

"A plaintiff's failure to exhaust administrative remedies is an affirmative defense, which is the defendant's burden to prove.*" Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007). However, once the defendant has established that the plaintiff failed to timely file their lawsuit, "[a] plaintiff has the burden of establishing that an exception applies . . . ." *Urlacher v. Tuesday Morning, Inc.*, No. 89 C 8667, 1990 WL 37675, at *2 (N.D. Ill. Mar. 19, 1990) (citing *Knox v. Cook Cnty. Sheriff's Police Dep't.,* 866 F.2d 905, 907 (7th Cir. 1988)).

Enterprise argues that Washington's hostile work environment claim relies on allegations in Washington's first and third discrimination charges (Charge No. 2016 CF 1895 and Charge No. 2017 CF 3370) that are time-barred. (R. 115 at 9–10.) In ruling on Enterprise's motion to dismiss, the Court held that sexual harassment claims in Washington's third charge were not properly exhausted because Washington did not file his suit within ninety days of receiving a notice of right-to-sue on April 19, 2019. (R. 24 at 8–9.) It held off on making a similar determination as to the hostile work environment allegations in Charge No. 16 CF 1895, however. (*See id.* at 7–8.)

In doing so, the Court invoked an exception whereby a failure to exhaust administrative remedies is excused if "the claimant's failure to receive a right-to-sue letter is attributable to EEOC error" or "other circumstances beyond a plaintiff's control." (*Id.* at 7 (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 129 (7th Cir. 1989)). In his response brief, Washington represented that he never received the right-to-sue letter corresponding to Charge No. 16 CF 1895 (*id.* at 3), and that the EEOC had mistakenly refused to issue a revised notice following the Illinois Human Rights Commission's vacatur of the IDHR's dismissal order. (*See id.* at 8.) The Court noted that "the facts alleged by Washington may or may not turn out to be true once evidence is adduced" and that "other information may come out during fact discovery." (*Id.* at 7–8 (citing *Grasty v. Cambridge Integrated Servs. Grp., Inc.,* No. 12 C 9141, 2014 WL 5543933, at *4 (N.D. Ill. Nov. 3, 2014)).

It is now undisputed that the EEOC issued Washington a notice of right to sue on February 28, 2018 for Charge No. 2016 CF 1895. (*See* R. 116-40.) The notice stated:

> This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

(*Id.* (emphasis in original).) Washington admits that this notice was mailed to his home address, and he appears to abandon his contention that he never received it. (Pl.'s Resp. to Def.'s SOF ¶ 79); *Bobbitt v. Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001) ("The law presumes timely delivery of a properly addressed piece of mail."). Thus, Washington was obligated to file his suit by no later than May 24, 2018. And he did not do so.

Since Enterprise has shown that Washington did not timely file his suit, Washington bears the burden of establishing that he is entitled to an exception. *Urlacher*, 1990 WL 37675, at *2. Instead of presenting evidence, however, Washington simply asserts that Enterprise's timeliness argument is "foreclosed" by the Court's prior ruling. (R. 128 at 4.)

This argument misunderstands the current procedural posture. This is not the motion to dismiss stage, where affirmative defenses like failure to exhaust "need not be resolved . . . unless the litigant pleads [himself] out of court . . . ." *Winkelman v. Cont'l Nursing & Rehab. Ctr., LLC*, No. 20 C 2480, 2021 WL 5034833, at *4 (N.D. Ill. Feb. 1, 2021) (citing *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020)).

16

Instead, this "is the 'put up or shut up' moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). At summary judgment, if "one side cannot substantiate its position with admissible evidence, the court may grant summary judgment under Rule 56." *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012).

There is no evidence that the EEOC made a mistake in processing Washington's charge. The February 28 notice unambiguously stated that Washington needed to file a federal suit within ninety days and that "this will be the only notice of dismissal and right to sue that we will send you." (R. 116-40.) There is no indication that Washington informed the EEOC of his request for review of the IDHR's dismissal order or sent the EEOC a copy of the Commission's 2019 remand order within ninety days of receiving it.[7] And it is not clear that doing so would have made a difference. Washington identifies no authority pursuant to which the EEOC is obligated to rescind or reissue a federal notice of right-to-sue based on the outcome of state agency proceedings. *See* 42 U.S.C. § 2000e–5(f)(1); *cf. Perkins v. Fed. Home Loan Bank of Chi.*, No. 18 C 06418, 2019 WL 4958237, at *3 n.5 (N.D. Ill. Oct. 8, 2019) ("There is nothing in the statutory text or case law to suggest that the window to bring a *federal* employment discrimination claim depends at all on a *state* agency . . . reviewing the charge to determine whether there was a violation of the concomitant state statute

---

[7] The earliest follow-up communication between Washington and the EEOC regarding Charge No. 2016 CF 1895 is an email sent by Washington's counsel on November 25, 2019. (R. 17 at 18.) This email was sent long after the ninety-day window had expired, and there is no evidence that the EEOC promised to issue a revised notice in response to this email, or any other communication.

17

(the Illinois Human Rights Act).") (emphasis in original); *accord Sanchez v. BCTGMI Loc. #1*, No. 20 C 1782, 2021 WL 1853305, at *4 (N.D. Ill. May 10, 2021). Indeed, such a theory would contradict the plain language of the federal notice. *See Sanchez*, 2021 WL 1853305, at *4 (observing that the right-to-sue notice "did not include any exceptions or indications that the IDHR's continued investigation tolled the window [for bringing suit]").

For the same reasons, the evidence does not support equitable tolling of the ninety-day period. *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). Tolling "is reserved for situations in which the claimant has made a good faith error . . . or has been prevented in some extraordinary way from filing his complaint in time." *Id.* (internal quotation omitted). Such circumstances are not present here. *See Perkins*, 2019 WL 4958237, at *3 (rejecting equitable tolling of ninety-day deadline for suit in federal court based on pending IDHR proceedings); *Sanchez*, 2021 WL 1853305, at *4 (same). Even if the ninety-day period had been tolled for the entire state agency review process, Washington still failed to file his lawsuit within ninety days of receiving a Notice of Substantial Evidence from the IDHR on June 6, 2019. (R. 116-43.) In short, because the undisputed evidence indicates that Washington did not file his lawsuit within ninety days of receiving a notice of right-to-sue, and because he has not shown that he is entitled to an equitable exception, the allegations in Charge No. 16 CF 1895 are untimely.

This does not end the inquiry, however. Even if allegations contained a charge of discrimination are time-barred, a plaintiff may still assert claims that are "like or

18

reasonably related to" the allegations in a timely-exhausted operative charge and that "grow[] out of" the operative allegations. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). For claims to be reasonably related in this way, they must "describe the same conduct and implicate the same individuals." *Sommerfield v. City of Chi.* 863 F.3d 645, 648 (7th Cir. 2017).

Washington's hostile work environment claim centers on harassment and discriminatory comments made by Tarafa, Zamzow, and McCann while Washington was working at Enterprise, as well as claims that Washington was "isolated" from other Enterprise employees following Enterprise's investigation into these individuals' conduct. By contrast, the two EEOC charges (Charge Nos. 2017 CF 1743 and 2018 CF 1378) describe Gunnells' failure to promote Washington in 2017 for the lead driver position, and Mecklenburg's termination of Washington's employment on January 22, 2018. Neither operative charge mentions harassment or discriminatory comments by Zamzow, Tarafa, and McCann or Enterprise's response to these incidents.

"Where an EEOC charge is based only on an employee's termination, a hostile work environment claim that involves a separate set of incidents over a period of time preceding the termination is not sufficiently related to the EEOC charge." *Radek v. Target Corp.*, No. 16 C 4750, 2017 WL 6733717, at *3 (N.D. Ill. Dec. 19, 2017) (citing *Sitar*, 344 F.3d at 726). Similarly, a hostile work environment claim is not properly exhausted by allegations concerning failure to promote when the alleged conduct and

19

individuals are distinct. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004).

Because the allegations underpinning Washington's hostile work environment claim involve different incidents, conduct, and individuals than his wrongful termination and failure to promote claims, they are not "reasonably related" to the allegations set forth in the two operative charges. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). They are therefore time-barred. The Court concludes that Washington has failed to exhaust his administrative remedies for his hostile work environment claim and that Enterprise is entitled to summary judgment.

## B.    Wrongful Termination

The Court next considers Washington's wrongful termination claim. To establish a *prima facie* case of wrongful termination, Washington must present evidence that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he was terminated; and (4) at least one similarly situated employee not in his protected class was treated more favorably than him. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017).

Enterprise argues that Washington was not meeting its legitimate expectations at the time of his termination due to his poor attendance record. (R. 115 at 19.) "It should not require saying that generally attendance is a requirement of a job." *Moore v. CN Transp. Ltd.*, No. 17 C 6188, 2021 WL 111489, at *10 (N.D. Ill. Jan. 12, 2021) (quoting *Waggoner v. Olin, Corp.*, 169 F.3d 481, 483 (7th Cir. 1999), *superseded on other grounds*). The undisputed evidence indicates that Washington

worked just over 50% of his required hours in the six-months preceding his termination, and that he received multiple warnings about his attendance. (Pl.'s Resp. to Def.' SOF ¶¶ 44, 45, 68.) Moreover, on numerous occasions, Washington failed to provide medical documentation to substantiate his absences as required by Enterprise's attendance policy. (Def.'s SOF ¶ 67.) These facts establish that Washington was not meeting Enterprise's legitimate expectations at the time of termination. *See, e.g.*, *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) (affirming grant of summary judgment on race discrimination claim where the undisputed evidence showed that plaintiff "repeatedly missed work" and was reprimanded multiple times).

Washington cites the January 22, 2018 letter from Enterprise's benefits department as evidence that he was on approved medical leave when he was terminated. (R. 128 at 7.) While the letter indicates that Washington was placed on leave on December 7, 2017, it does not purport to authorize the leave and is completely silent as to the duration of the leave. (R. 116-38); *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document."). The letter speaks only to Washington's "health and welfare benefits" and indicates that these benefits would continue only if Washington remained a member of an "eligible class." (R. 116-38.)

This letter is insufficient to create a genuine dispute of material fact as to whether Washington was meeting Enterprise's legitimate expectations. Notably,

Enterprise's attendance policy allows Enterprise to deny medical leave when proper documentation is not provided in advance; and the undisputed evidence indicates that, at the time of his termination, Washington had accumulated over two weeks of absences for which he did not provide a doctor's note. The letter does not change this fact. Moreover, Debra Cuva testified that the letter was automatically generated by Enterprise's corporate benefits department when Washington's leave was first approved, and that Washington's leave status "changed" prior to his termination date (*i.e.*, he was no longer a member of an "eligible class") because he "had an indefinite return date, was not able to do his job as a driver and was unable to return to work." (R. 101-6 at 51:15–52:3.) Washington presents no evidence to rebut this testimony.

Taking a step back, however, even if Washington could demonstrate that he was on approved leave when he was terminated, this would still be insufficient to establish a *prima facie* case of race-based discrimination. Washington must also present evidence that Enterprise acted with discriminatory animus or that a comparator was treated more favorably than him. *See, e.g.*, *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 803 (7th Cir. 2014).

Because there is no evidence in record to suggest that Mecklenburg and Cuva were motivated by discriminatory intent, Washington must proceed by the "indirect method" and identify a comparator who is similarly situated to himself and treated more favorably. *See id.* at 802. Although a comparator "need not be identical in every conceivable way" to support a claim of race-based discrimination "they must be directly comparable to the plaintiff in all material respects." *McDaniel v. Progress*

*Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). "Whether a co-worker is similarly situated is typically a question for the factfinder, but summary judgment is appropriate where no reasonable jury could find the plaintiff has met her burden." *Langenbach*, 761 F.3d at 802–03 (affirming grant of summary judgment where comparators had "[d]ifferences in experience, education, and qualifications").

The two comparators that Washington identifies, McCann and Tarafa, do not fit the bill. First and foremost, the Court struggles to see how these individuals were "treated more favorably than" Washington, since they were also terminated by Enterprise. Even accepting Washington's characterization that they received more warnings and "progressive discipline" before they were let go, Washington still must show that they "engaged in comparable rule or policy violations." *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009); *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005).

This is where the comparison falls apart. McCann and Tarafa did not take an extended leave of absence comparable to Washington's. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000) ("[I]n disciplinary cases—in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must show that he is similarly situated with respect to performance, qualifications, *and conduct*.") (emphasis added). Washington admits that McCann and Tarafa were fired for performance-related issues and at-work misconduct—including insubordination—whereas he was terminated for violating the company's attendance policy. (Pl.'s Resp. to Def.'s SOF

¶¶ 23, 39, 72, 73). Because Washington fails "to eliminate confounding variables" between himself and his comparators, he falls short of making his *prima facie* case. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). The Court therefore grants Enterprise's motion for summary judgment on Washington's wrongful termination claim and denies Washington's motion for summary judgment.

### C. Failure to Promote

The Court next considers Washington's claim that Enterprise discriminated against him by failing to promote him to the lead driver position and by hiring McCann, a White employee. A *prima facie* case for failure to promote requires a plaintiff to present evidence that (1) he was qualified for the position sought, (2) the employer rejected him for the position, and (3) the employer promoted someone outside of the protected class who was not better qualified for the position. *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016).

The parties agree that Washington was qualified for the lead driver position and was rejected by Enterprise. The only dispute is whether McCann—the candidate who Enterprise ultimately selected—was better qualified than him. Washington testified that McCann was less qualified since he had been working at Enterprise for a shorter time. (Washington Dep. at 138:23–139:20.) In response, the company submitted evidence that it hired McCann because he received a higher score during his interview and had previous management experience. (Pl.'s Resp. to Def.'s SOF ¶¶ 26, 28, 29.)

To rebut Enterprise's evidence that McCann was hired for legitimate, non-discriminatory reasons, Washington must produce evidence that Enterprise's

proffered reasons for hiring McCann were mere pretext. *See, e.g., Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (holding that if an employer offers evidence of a nondiscriminatory motive for alleged discrimination "the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext."). "Simply put, pretext is a lie— 'a phony reason for some action.'" *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 894 (7th Cir. 2016) (quoting *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). Establishing pretext is a "high evidentiary bar." *Id.*

It is here where Washington's failure to promote claim loses steam. At summary judgment, it is not enough for Washington to simply assert that he was more qualified than McCann. *See id.*; *Hurlow v. Toyota Motor N. Am., Inc.*, No. 21 C 4049, 2024 WL 689961, at *13 (N.D. Ill. Feb. 20, 2024) (citing *Barnes-Staples v. Carnahan*, 88 F.4th 712, 718 (7th Cir. 2023)) (holding that a plaintiff's "disagreement with [his employer] regarding whether he was a better candidate would not permit a reasonable jury to find pretext."); *Tyburski v. City of Chi.*, No. 16 C 9228, 2018 WL 3970150, at *9 (N.D. Ill. Aug. 20, 2018) ("[A]n employee's own subjective belief that [he] is as qualified or more qualified than another applicant is insufficient, and . . . is not itself evidence of pretext.").

Indeed, evidence concerning Washington's qualifications "only would serve as evidence of pretext if the differences between [him and McCann] were 'so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was *clearly better qualified* for the position at issue.'" *Riley*, 829 F.3d at 894 (quoting *Hobbs v. City of Chi.*, 573 F.3d 454, 462 (7th Cir.

2009)) (emphasis in original). Here, the evidence is not so one-sided. Although Washington's tenure at Enterprise was longer than McCann's, Washington does not dispute that McCann received a higher score during the interview and he does not controvert Enterprise's evidence that McCann had more management experience. (Pl.'s Resp. to Def.'s SOF ¶¶ 26, 28, 29). Reasonable persons could dispute which of the two was better qualified. *Riley*, 829 F.3d at 894.

Besides attacking McCann's qualifications, Washington presents no evidence to substantiate his claim that "Gunnells set up Washington to look bad at the interview to justify not giving him the position." (R. 100 at 11.) Instead, Washington cites portions of his own deposition testimony that dispute the scores that Gunnells gave him and state that he felt like he did not need to completely answer questions during the interview because Gunnells "had already [given him] a letter of recommendation." (Washington Dep. at 146:1–148:19.) This is insufficient to create a genuine issue of material fact. *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607 (7th Cir. 2022) (affirming summary judgment where sole evidence of pretext was plaintiff's disagreement with supervisor's assessment); *Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (same); *see also Hua v. Arthur J. Gallagher & Co.*, No. 20 C 6921, 2023 WL 3763527, at *9 (N.D. Ill. June 1, 2023) (finding insufficient evidence of pretext where plaintiff simply asserted, without support in

the record, that termination was "a cover up for . . . replacing [] old and disabled" employees).[8]

Because Washington has not presented any evidence to suggest that Enterprise's reasons for hiring McCann were pretextual, the Court grants Enterprise's motion for summary judgment and denies Washington's motion for summary judgment on this claim.

### D. Retaliation

Finally, the Court addresses Washington's retaliation claim. Although retaliation is a viable cause of action under the ADA as well as Title VII and the IDHR, *see, e.g.,* 42 U.S.C. § 12203(a); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009), Washington's complaint and summary judgment briefing address only Title VII retaliation. To make out a *prima facie* case of retaliation under Title VII, Washington must offer evidence that: "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018).

Washington claims that he engaged in protected activity by submitting complaints to Enterprise's HR department and by filing discrimination charges with the IDHR. (R. 100 at 5.) Enterprise does not dispute that these activities are protected

---

[8] In his response brief, Washington refers to an email sent to IDHR investigator, Norman Slaughter, in 2016 describing Enterprise's response to complaints about Tarafa. (R. 128 at 14.) This email was not made part of the summary judgment record or referenced in any of Washington's Local Rule 56.1 statements, and the Court may ignore it. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005). Even if the Court were to consider the email, it was sent almost a year prior to the hiring decision and does not reference Gunnells.

but argues that Washington fails to raise a genuine factual dispute as to causation. (R. 115 at 23–25.)

To demonstrate causation, a plaintiff must present evidence that a retaliatory motive was the "but-for cause of the challenged employment action." *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 916 (7th Cir. 2022) (citation omitted). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* (citation omitted). Suspicious timing alone is not enough to survive summary judgment. *See id.* (citing *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011)); *Boss*, 816 F.3d at 918 ("A causal link requires more than the mere fact that an employer's action happens after an employee's protected activity."); *Casna*, 574 F.3d at 427. Nor is a plaintiff's belief or speculation that an action was retaliatory sufficient. *See Lesiv*, 39 F.4th at 920–21.

As indicated above, the record reveals two "adverse employment actions:" Enterprise's failure to promote Washington in 2017 and its termination of his employment in 2018. With respect to Enterprise's failure to promote Washington, the undisputed evidence is insufficient to create a genuine issue of fact. Notably, McCann and Puleo interviewed and assessed candidates for the lead driver position nearly a year after Washington complained to Enterprise about alleged harassment from Zamzow and McCann. And Washington does not point to any evidence that Enterprise's decision to hire McCann was a pretext for retaliation. *See Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1020 (7th Cir. 2016).

28

That leaves Enterprise's decision to terminate Washington. Washington points out that Enterprise fired him after he filed an administrative charge with the IDHR on October 25, 2017 complaining that McCann discriminated against him. (R. 128 at 12–13.) But Washington filed this charge nearly three months before he was terminated. Such a large gap in time between the protected activity and the alleged retaliation is not enough to create a triable issue of fact; the Seventh Circuit has affirmed summary judgment on the grounds that "a two-month delay" between the protected activity and the materially adverse action "cannot show retaliation on its own." *Igasaki v. Ill. Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 959 (7th Cir. 2021); *see also Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action.").

The other evidence Washington points to is similarly insufficient, even when viewed in the light most favorable to him. For example, Washington cites an August 10, 2017 email exchange between Gunnels, Mecklenburg, and Cuva that occurred shortly after Gunnels gave Washington the Attendance Warning Memorandum. (*See* R. 116-21.) In the email, Cuva describes a conversation in which Washington stated that he believed Gunnells had issued the Memorandum as "retaliation" for Washington refusing to work weekends. (*Id.* at 2.) In a second message, Mecklenburg requests a statement from Gunnells about the incident and states that "this will only help us when he files." (*Id.*) In response, Gunnells stated that he had given

29

Washington the Memorandum the previous Monday, but that the referenced conversation had taken place earlier that day and he was "not sure how that could be retaliation." (*Id.*)

Washington's contention that Gunnells issued the Attendance Warning Memorandum as retaliation is not sufficient to save his retaliation claim. Neither the issuance of a disciplinary memo nor the documentation of a disciplinary warning by HR personnel constitutes an adverse action. *Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023); *Johnson v. Johnson & Johnson*, 67 F. Supp. 3d 1001, 1010 (N.D. Ill. 2014). The Seventh Circuit has cautioned against "interpret[ing] [] simple personnel actions as materially adverse" since doing so "would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit." *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998).

Nor is the email sufficient to establish a causal relationship between Washington's complaint to HR and his termination five months later. The substantial length in time between the August 2017 email exchange and Washington's termination in January 2018, as well as the absence of any other evidence to support a causal relationship between the two incidents, precludes an inference that Washington was terminated for complaining to Cuva about Gunnells. *See Igasaki*, 988 F.3d at 960 (affirming summary judgment on retaliation claim and rejecting

causation arguments based on layers of "impermissible speculation").[9] Accordingly, the Court grants summary judgment to Enterprise on Washington's retaliation claim and denies Washington's motion for summary judgment.

## II. DISABILITY DISCRIMINATION

The Court next addresses Washington's ADA claims. Washington alleges that Enterprise discriminated against him on the basis of his disability by failing to accommodate his request for indoor work. He also argues that he was wrongfully terminated on account of his disability.

To establish a *prima facie* case for failure to accommodate, Washington must present evidence that: (1) he is a qualified individual with a disability; (2) Enterprise was aware of the disability; and (3) Enterprise failed to reasonably accommodate him. *James v. Hyatt Regency Chi.,* 707 F.3d 775, 782 (7th Cir.2013). For a discriminatory termination claim, Washington must establish that he is a qualified individual with a disability and that he was terminated because of his disability. *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002).

As a threshold matter, Enterprise disputes whether asthma constitutes a disability under the ADA. (Def.'s Resp. to Pl.'s SOF ¶ 23.) The ADA defines

---

[9] In his reply, Washington also references an "in-house" memo sent by Gunnells to Cuva and Mecklenburg, stating "[t]his is the text I got from Lem today. Also, David called in today. They were running together yesterday. Not sure if this is in retaliation for hiring Neil. I'll keep watching it." (R. 128 at 12–13.) This email was not offered as part of the record, and the Court may disregard it. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Moreover, while the message references an adverse employment action—Enterprise's decision to hire McCann—it does not give rise to an inference of causation. The email was sent after the adverse action took place, and Gunnells' statement plainly references retaliation *by Washington* in response to Enterprise's decision to hire McCann.

"disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A); *see Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). Enterprise argues that Washington's asthma is not a disability since it is treatable and does not prevent him from performing work-related tasks when he is not suffering flare-ups. (*See* R. 101-2 at 193–202); *see also Anderson v. United Air Lines, Inc.*, No. 09 C 3210, 2010 WL 653491, at *4 (N.D Ill. Feb. 22, 2010) ("If medication corrects an impairment, then the individual does not have an impairment that substantially limits a major life activity.").

The Court need not determine whether Washington's asthma is a "disability" under ADA, since, even if Washington is disabled, he still must establish that he is "a qualified individual" to proceed on either of his disability claims. *James,* 707 F.3d at 782; *Dvorak*, 289 F.3d at 483. Determining whether an individual is qualified is a two-part inquiry. A plaintiff must establish (1) that he satisfies "the prerequisites for the position" in terms of skills, educational background, and other qualifications, and (2) that he "can perform the essential functions of the position held or desired, with or without a reasonable accommodation." *Smithson v. Austin*, 86 F.4th 815, 820 (7th Cir. 2023).

Enterprise argues that Washington is not a "qualified individual" because he admits that, following his asthma flare-ups, he was not able to perform an "essential function" of his job: driving cars outside. (R. 115 at 14–16.) "To determine what constitutes an essential function of the position, courts consider 'the employer's

32

judgment,' as well as a 'written job description' of the position." *Dunderdale*, 807 F.3d at 853 (citing 42 U.S.C. § 12111(8)).

Washington's written job description lists one of his "essential responsibilities" as "deliver[ing] vehicles and in some instances, customers, employees or vendors safely and timely to the appropriate destination(s) while giving helpful, courteous and professional customer service." (R. 116-11.) Washington does not dispute that "driving vehicles to designated locations" was one of his "primary job responsibilities." (Pl.'s Resp. to Def.'s SOF ¶ 12.) However, he claims that his asthma made him unable to perform this function from October 2017 to January 2018. (*See* Pl.'s SOF ¶¶ 20, 24–26 (describing Washington's requested accommodation as "work[ing] indoors" and "non-driving duties.").)

Washington's admission that driving cars outside was an essential function of his position and that he was unable to perform this function for over four months due to his asthma is fatal to his ADA claims. "The Seventh Circuit routinely affirm[s] grants of summary judgment on the basis of employees' inability to perform just one essential function." *Valsamis v. John Crane Inc.*, No. 18 C 7079, 2023 WL 3886105, at *8 (N.D. Ill. June 8, 2023) (collecting cases and granting summary judgment for employer based on an employee's admission that he could not perform an essential function of his job).

Washington argues that Enterprise could have accommodated his disability by granting him a leave of absence or by allowing him to work indoors during winter months. But "the term 'reasonable accommodation' is expressly limited to those

measures that will enable the employee to work," *i.e.* to perform the essential functions of their position. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (quoting 42 U.S.C. § 12111(8)).

Washington's request for extended leave is not a reasonable accommodation under the ADA. *See id.* ("[A] long-term leave of absence cannot be a reasonable accommodation."). While medical leave of "a couple of days or even a couple of weeks" may constitute a reasonable accommodation under certain circumstances, "a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job." *Id.* The undisputed evidence shows that Washington accumulated almost two months of absences following his asthma flare-ups in October 2017. These absences occurred after he received an Attendance Warning Memorandum indicating that he needed to improve his attendance and that he had exhausted his protected leave. Following Washington's representation to Mecklenburg on January 22, 2018 that he would not return to work until he was cleared by a doctor, Enterprise was not required to allow further absences as an accommodation.

Nor is Washington's request for indoor work a reasonable accommodation. "Under the ADA, an employer is not required to modify, reduce, or reallocate the essential functions of a job to accommodate an employee." *Dvorak*, 289 F.3d at 484; *Severson*, 872 F.3d at 482. Washington states that "there were always toll passes in the accounting department that needed to be scanned" and "whenever [Fleet Logistics Supervisor Wanda] Vance was short on work in her department, she would send one

34

of her employees to assist in the accounting department." (R. 128 at 8–9.) But these tasks are clearly outside of Washington's job description. He was not employed as a member of the accounting department or the fleet logistics team, and processing toll passes is not listed among his "essential responsibilities." (R. 116-11.)[10] And Washington admits that "miscellaneous maintenance and administrative tasks" that he performed were "non-essential duties." (Pl.'s Resp. to Def.'s SOF ¶ 12.)

Although a disabled employee may be entitled to "[r]eassignment to a vacant position" for which he is qualified, Washington identifies no vacant positions that were available at the time he was terminated. *Severson*, 872 F.3d at 482 (holding that it is the employee's burden to prove that there were, in fact, vacant positions available at the time of termination). Nor does he present evidence that Enterprise had a general policy of creating "light duty" positions for disabled employees outside of their essential functions.[11] *Id.* The fact that Enterprise temporarily accommodated Washington's asthma by allowing him to work indoors from October 18 to 20, 2017 is insufficient to create a genuine dispute. To the contrary, if an employer "bends over backwards to accommodate a disabled worker . . . , it must not be punished for its

---

[10] Although one of the fleet logistics employees, Diane Jenkins, was occasionally sent to accounting to scan toll passes when she was not busy with other work, Jenkins was "not on the drive team." (R. 116-3 at 67:12–13.) Mecklenburg testified that inventorying toll passes was a "one person" job and it was not Enterprise policy to "pay two people to perform the same job." (R. 116-5 at 36:13–19); *see also Gile v. United Airlines, Inc.*, 213 F.3d 365, 374–75 (7th Cir. 2000) (providing that the obligation to reasonably accommodate does not mean that employers must "bump" another employee or create a new position).

[11] Washington identifies another Enterprise employee, Marsha Harris, who was allowed to work inside during the cold weather because of her arthritis. Critically, however, Harris was not a driver, but a customer service agent whose essential responsibilities included manning an indoor exit booth. (*See* R. 116-4 ¶ 39; R. 116-49.)

generosity." *Id.* at 483 (quoting *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995)); *Equal Emp. Opportunity Comm'n v. Charter Commc'ns, LLC*, 75 F.4th 729, 741 (7th Cir. 2023) (providing that if an employer "goes further than the law requires" to accommodate a disability this does not imply an ADA violation).

Even ignoring Washington's inability to drive outdoors, his repeated absences further demonstrate he was not a "qualified employee" under the ADA. Washington's job description lists "maintain[ing] a regular and reliable level of attendance and punctuality" as one of the "essential responsibilities" of his position. (R. 116-11.) As discussed above, Washington racked up numerous unexcused absences prior to his termination and showed up for just over 50% of his scheduled hours in the six months before he was terminated. "The Seventh Circuit has repeatedly held that an employee who does not come to work cannot perform the essential functions of his job." *Moore-Fotso v. Bd. of Educ. of the City of Chi.*, 211 F. Supp. 3d 1012, 1025 (N.D. Ill. 2016) (collecting cases).

Viewing the record in the light most favorable to Washington, there is no genuine dispute that he was unable to perform one or more essential functions of his job. Enterprise's motion for summary judgment on Washington's ADA claims is therefore granted, and Washington's motion for summary judgment is denied.

## CONCLUSION

For the reasons stated in this memorandum opinion and order, Plaintiff Lemuel Washington's motion for summary judgment [99] is denied, and Defendant

Enterprise Leasing Company of Chicago, LLC's motion for summary judgment [114] is granted. Judgment is entered for the defendant. Civil case terminated.

Date: July 1, 2024

_____

JEREMY C. DANIEL
United States District Judge